**PARKE STATE BANK, Appellant,**

v.

**Ardith L. AKERS, Appellee.**

No. 31S05–9505–CV–500.

Supreme Court of Indiana.

Dec. 29, 1995.

Rehearing Denied May 22, 1996.

Norman L. Lowery, Wright, Shagley & Lowery, Terre Haute, for appellant.

Terry E. Harris, Young, Harris & Harvey, Crawfordsville, for appellee.

ON PETITION TO TRANSFER

SELBY, Justice.

Parke State Bank, in violation of a safe deposit box rental contract, permitted unauthorized access to a jointly held safe deposit box. Jointly held certificates of deposit were removed, and endorsed by one joint owner. We find that the co-owner had a legally cognizable interest in the certificates of deposit, and that the Bank's breach of contract deprived her of this interest. We affirm the trial court.

FACTS

Harold and Ardith Akers were married on October 4, 1986. Early in November of 1986, at Harold's instruction, Parke State Bank (Bank) placed Ardith's name, as joint tenant with rights of survivorship, on four certificates of deposit which Harold held in a safe deposit box rented from the Bank. On the same day, Harold instructed Parke State Bank to name Ardith as a co-lessee of the safe deposit box, with the same right to access the box as Harold. After the Bank

added Ardith's name to the CDs, they were returned to the safe deposit box.

The Bank provided a written contract describing the terms of the box lease agreement, which provided, in relevant part: "The Lessee acknowledges the receipt of two (2) keys to the safe deposit box rented, together with a copy of the Rules and Regulations, subject to which the safety box is rented." Those rules and regulations, incorporated by reference into the lease agreement, limited access to the safe deposit box. The rules provide:

1. [ ] Unless otherwise agreed in writing, a Safe leased by two or more persons shall be held by them jointly and severally, and either of them, or their du[l]y appointed deputy without consent of any of them, is entitled to separate access to the Safe and may take possession and remove all or any part of its contents[.]

. . .

5. A deputy may be appointed in writing in such form and manner approved by the Bank, but *no renter may appoint a deputy without the consent of the other renter(s)* (Emphasis added).

Harold Akers was diagnosed with cancer in 1990. The certificates of deposit remained in the box until 1991. On August 7, 1991, while in Vermillion County Hospital for cancer treatment, Harold telephoned Parke State Bank, and advised the Bank's president, Charles A. Cooper, that Harold wanted his daughter, Deborah Hopkins, to have access to the safe deposit box. President Cooper advised Harold that he need only provide Ms. Hopkins with written authorization to enter the box. Harold gave Ms. Hopkins written authorization to enter the safe deposit box; Ms. Hopkins presented this authorization to the Bank. The Bank permitted her to enter the box, where she retrieved the four joint certificates of deposit. Harold then, in his hospital room, endorsed the certificates. Ms. Hopkins returned the endorsed certificates to the Bank on August 8 and exchanged the proceeds, at Harold's direction, for checks made out to herself and two of her children. The Bank never sought, and Ardith never gave, approval to Harold's selection of Ms. Hopkins as a deputy authorized to enter the box. Harold died on Sep-

tember 2, 1991. Soon after Harold's death, Ardith learned that Ms. Hopkins had removed the certificates of deposit, that they had been negotiated, and that Ms. Hopkins had received the proceeds.

Ardith filed this action against the Bank, alleging that the Bank breached the safe deposit box rental agreement when it permitted Ms. Hopkins to gain access to the box without seeking Ardith's approval. Ardith sought damages under both breach of contract and negligence theories. The trial court heard the evidence and awarded judgment for Ardith against the Bank in the amount of $35,000.00, the full amount of the certificates of deposit, as well as $64.18 statutory interest.

The Bank appealed, and the Court of Appeals reversed, *Parke State Bank v. Ardith Akers* (1995), Ind.App., 645 N.E.2d 1096, ruling that, although the Bank was negligent when it breached its contractual duty to seek Ardith's authorization before approving Harold's request to permit Ms. Hopkins to enter the safe deposit box, Ardith had no damages. We disagree with the Court of Appeals, grant transfer and affirm the decision of the trial court.

## DISCUSSION

This is an appeal from special findings of fact and conclusions of law entered by the trial court. We are limited, therefore, in our review to determining, first, "whether the evidence supports the [trial court's] findings," and next, "whether those findings support the [trial court's] judgment." *Coffin v. Hollar* (1993), Ind.App., 626 N.E.2d 586, 589. Special findings and the judgment therefrom will be set aside only if they are clearly erroneous. We will not "reweigh the evidence nor judge the credibility of the witnesses when determining whether the findings and the judgment are clearly erroneous." *Id.* at 589, citing *W & W Equipment Co., Inc. v. Mink* (1991), Ind.App., 568 N.E.2d 564, 569–70. We will reverse only if the record is "devoid of facts or inferences to support them." *Coffin,* 626 N.E.2d at 586.

 The essential question is whether the Bank's breach of contract resulted in cognizable damages to Ardith, where the Bank's breach only permitted a rightful owner of the certificates, Harold, to endorse them. To succeed in a breach of contract claim, Ardith bears the burden of demonstrating that the Bank's breach of contract was a "substantial factor" contributing to her damages. *Fowler v. Campbell* (1993), Ind. App., 612 N.E.2d 596, 602. The trial court found ample evidence to support its conclusions that the Bank breached its safe deposit box contract when it permitted Ms. Hopkins to gain access to the locked box. The Bank does not challenge these findings. Rather, the Bank's principal argument is that because the certificates of deposit eventually came into possession of a rightful owner, Harold, the Bank should be relieved of liability. We find this argument unpersuasive.

 A party may be in constructive possession of property without having actual possession. *See, e.g., In Re Alliance Beverage Co., Inc.* (1976), 420 F.Supp. 437, 440 (noting that the bankruptcy court is in constructive possession of the bankrupt's property); *Bergfeld v. State* (1988), Ind., 531 N.E.2d 486, 490 (holding that "constructive possession" of drugs is "intent and capability to maintain dominion and control" of the drug.) At the time of the Bank's breach of contract, Ardith had at least two identifiable interests in the certificates of deposit. First, because Ardith had access to the safe deposit box, had "intent and capability to maintain dominion and control" over the certificates of deposit, and was therefore in constructive possession of the certificates of deposit, Ardith had a present possessory interest in the certificates. *See Hendricks v. Grant County Bank* (Okl.1963), 379 P.2d 693, 696. The present possessory interest created in Ardith the present right to hold the certificates in her possession. Ardith also had a second important interest in the certificates of deposit. Certificates of deposit are contracts, and can create third-party beneficiary rights in those parties identified with rights of survivorship. *In Re Estate of Fanning* (1974), 161 Ind.App. 380, 315 N.E.2d 718, 720–21. Because the certificates identified Ardith as holding a "right[ ] of survivorship," Ardith had a contingent beneficial interest as a donee-beneficiary in the certificates of deposit. *Fanning,* 315 N.E.2d at 720.

The express terms of the box rental agreement gave Ardith the right to possess the certificates as against the whole world, except for co-lessee Harold. Harold himself created this bundle of interests and vested these interests in Ardith by adding her name to the box lease agreement and to the certificates of deposit, and then placing the certificates into the box. The trial court determined, in a finding of fact, that Harold's terminal illness was such that he "could never have gone to the Lock Box" himself. (R. at 160). Thus, at the time the Bank breached its contract and permitted Ms. Hopkins to enter the box, the Bank destroyed Ardith's present possessory interest in the CDs, an interest that, given the facts of this case, should have assured her that her contingent beneficial interest in the CDs would ripen into sole ownership of the certificates upon Harold's imminent death.

The Bank's violation of Ardith's possessory interest permitted Harold to endorse the certificates of deposit, destroy her contingent beneficial interest, and distribute the proceeds to Ms. Hopkins and her children. The trial court properly determined that the Bank's breach precipitated Ardith's damages, and that the breach was a substantial factor contributing to Ardith's damages.

 Because the breach was a substantial factor contributing to Ardith's loss, *Fowler v. Campbell* (1993), Ind.App., 612 N.E.2d 596 guides our analysis of Ardith's claim. *Fowler* provides: "[i]n order to recover on a breach of contract claim, the alleged breach must be a cause in fact of the plaintiff's loss." *Fowler* at 601, *citing* Farnsworth, *Farnsworth on Contracts* § 12.1, at 148. Evidence adduced at trial supports the trial court's determination that the Bank's breach of contract was a cause in fact of Ardith's loss. The Bank argues that Harold's subsequent endorsement of the certificates and distribution to other family members is the true cause of Ardith's loss. This, however, is not determinative of the outcome here. "For a cause in fact to be a legal

cause, it must have been a substantial factor in bringing about the harm." *Fowler,* 612 N.E.2d at 602. "The test of causation in common law contract actions is not whether the breach was the only cause, but whether the breach was a substantial factor in bringing about the harm." *Id.,* citing *Krauss v. Greenbarg* (3rd Cir.1943), 137 F.2d 569, 572, *cert. denied,* 320 U.S. 791, 64 S.Ct. 207, 88 L.Ed. 477. While Harold's subsequent endorsement and distribution of proceeds from the certificates to his daughter, Deborah Hopkins, and her children may have contributed to Ardith's loss, Indiana does not recognize comparative causation in breach of contract claims. *Fowler,* 612 N.E.2d at 602. The trial court properly concluded that the Bank's breach of contract was a substantial factor in bringing about Ardith's damages. The court concluded that the measure of those damages was the value of the certificates of deposit, $35,000.00, plus statutory interest.

■■■ The Court of Appeals concluded that because Harold did nothing but retrieve and liquidate certificates of deposit which he owned, Ardith had no damages, and was, therefore, not entitled to the judgment. We disagree with the Court of Appeals' analysis. "It has always been a general principle under our legal system that for every wrong there should be a remedy." *State ex rel. Pollard v. Criminal Court of Marion County, Division One* (1975), 263 Ind. 236, 329 N.E.2d 573, 583. A damage award will be reversed only when it is not within the scope of the evidence before the finder of fact. *Fowler,* 612 N.E.2d at 603, *citing Persinger v. Lucas* (1987), Ind.App., 512 N.E.2d 865, 868. "A judgment is not excessive unless the amount cannot be explained upon any basis other than prejudice, passion, partiality, corruption, or some other improper element. . . . A damage award must be supported by probative evidence and cannot be based on mere speculation, conjecture, or surmise." *Id.*

■■ We note that here, where the trial judge made a specific finding of fact that Harold was too ill to ever return to the Bank, the trial court properly concluded that Ardith's damages were coextensive with the value of her contingent beneficial interest in the certificates of deposit, *i.e.* $35,000.00 plus the statutory interest amount.

In addition to her breach of contract claim, Ardith also sought damages in negligence. The trial court found Ardith's negligence claim meritorious; however, the court determined that her damages in negligence were coterminous with her breach of contract claim. We have considered the Bank's challenges to the negligence claim, as well as the other assignments of error which the Bank raises. Because we find the breach of contract claim dispositive, we need not review the merits of the negligence claim and other alleged errors.

The trial court is affirmed.

DICKSON, J., concurs.

SULLIVAN, J., concurs in result without opinion.

SHEPARD, C.J. dissents with opinion in which DeBRULER, J., joins.

SHEPARD, Chief Justice, dissenting.

The president of a small town bank responded to the deathbed request of a customer dying of cancer by allowing the customer's daughter to come by and pick up certificates he undisputably owned. He sent his daughter, previously a stranger to the safe deposit box and the certificates. At that moment, the certificates had no value to the daughter. They did have value at that moment to the wife, who lost her expectancy only because her husband changed his mind about who should receive the proceeds. The bank's good samaritanship was not the cause of this change of heart and thus should not be punished.

DeBRULER, J., joins.